0707

Mary Ann West WINGARD, Respondent-Appellant v. Robert Allen WINGARD, Appellant-Respondent.

(344 S. E. (2d) 191)

Court of Appeals

*H. Ray Ham,* West Columbia, *for appellant-respondent.*

*Ann L. Furr* of *Furr & Delgado,* Columbia, *for respondent-appellant.*

Heard March 26, 1986.

Decided May 12, 1986.

CURETON, Judge:

The family court granted Mary Ann West Wingard (West)[1] a divorce from Robert Allen Wingard (Wingard ) on

---

[1] After the divorce decree Mary Ann West Wingard resumed using West as her surname.

the ground of adultery. Wingard appeals from portions of the order which address the distribution of marital property. West appeals from the lump-sum alimony award and the denial of attorney's fees and costs. We affirm in part and remand in part.

When the parties were married in 1971, West was a widow with four young children. She and her children owned their own home and were supported by social security benefits. West's social security benefits were terminated when she remarried.

Wingard, too, had been married before and he moved into West's home when they married. He wanted West to be a full-time homemaker. She complied and for six years was a full-time homemaker. Then for three years she worked part-time as an administrative assistant and during the final three years of the marriage she has worked full-time. Even though West worked outside of the home, she still performed necessary domestic chores e.g. cooking and cleaning. West's gross annual salary is Eleven Thousand Seven Hundred Dollars ($11,700.00); Wingard's is Thirty Thousand Two Hundred Four Dollars ($30,204.00).

For the first five years of the marriage West paid the house payment with the children's social security check. Wingard paid for utilities and food. Once West began to work outside of the home, all of her income and the children's social security benefits were used to support the household. Wingard made monthly contributions to the payment of household bills. However, a portion of his income was invested in stock offered by his employer, South Carolina Electric and Gas Company (SCE&G). All of the SCE&G stock was acquired during the marriage.

At trial the SCE&G payroll supervisor testified about Wingard's stock. He testified that although Wingard had 1,839 fully paid for shares, valued at $32,872.125, he had access to only 359 shares without a penalty. (If Wingard resigned from SCE&G or became deceased, he or his estate would have immediate access to all of the shares.) Some of the stock was financed entirely by his employer's contributions and as the shares matured, Wingard could transfer them into his retirement fund.

The issues on appeal concern the equitable distribution of the marital estate, alimony, an alleged outstanding motion, costs and attorney's fees.

## I.
## Equitable Distribution

On appeal Wingard argues that the trial judge erred by not complying with Rule 27(C) of the Rules of Practice for the Family Court. This rule requires the trial judge to set out salient facts which support her decision. He specifically takes issue with West's being awarded both a fifty-percent (50%) interest in the marital property including a fifty percent (50%) interest in the SCE&G stock and with his not being credited with Three Thousand Six Hundred Dollars ($3,600.00) expended for West's automobile.

While the trial judge may have structured the order more systematically, we find that there are ample facts and data in the record which support the award to West. The order sets forth facts from which the trial judge could conclude that West had a homemaker's equity in the marital property i.e. she remained out of the work force for six years at her husband's request and she performed domestic duties throughout the twelve year marriage.

We have reviewed the record and after considering among other things, the parties' financial contributions to the marital estate, West's homemaker's equity and Wingard's fault, we conclude that the facts and circumstances of this case support an equal division of the marital property. *See Shaluly v. Shaluly*, 284 S. C. 71, 325 S. E. (2d) 66 (1985); *Simmons v. Simmons*, 275 S. C. 41, 267 S. E. (2d) 427 (1980).

However, we remand for determination the division of the SCE&G stock. The trial judge should determine the number of shares in Wingard's retirement fund which was financed solely by SCE&G contributions and exclude these shares from equitable distribution. *See Johnson v. Johnson*, 341 S. E. (2d) 811 (S. C. Ct. App. 1986); *Smith v. Smith*, 280 S. C. 257, 312 S. E. (2d) 560, 563-64 (Ct. App. 1984) (a pension plan funded by the employer is non-marital property). The trial judge should also determine the value of the remaining shares as of the date of separation and there-

after determine what interest each party has in them. *See Anderson v. Anderson*, 282 S. C. 163, 318 S. E. (2d) 566, 567 (1984).

## II.
## Alimony

West argues that the trial court erred in awarding her Four Thousand Eight Hundred Dollars ($4,800.00) as lump-sum alimony. Wingard argues that West does not need any alimony because her earnings virtually meet her expenses.

■ We are persuaded by West's argument and unpersuaded by Wingard's. Lump-sum alimony is appropriate upon a finding of special circumstances. *Harris v. Harris*, 279 S. C. 148, 303 S. E. (2d) 97, 100 (1983); *Millis v. Millis*, 282 S. C. 610, 320 S. E. (2d) 66, 67 (Ct. App. 1984). Here, the trial judge erred in awarding lump-sum alimony without a finding of special circumstances justifying the award. If on remand the trial judge is unable to find special circumstances justifying a lump-sum award, he should then make appropriate findings in accordance with the factors to be considered in making a periodic alimony award set forth in *Lide v. Lide*, 277 S. C. 155, 283 S. E. (2d) 832 (1981).

## III.
## Outstanding Motion

■ On appeal Wingard argues that the trial judge erred by not ruling on a motion to amend a written pendente lite order to conform with a July 13, 1983 order issued from the bench at the close of a pendente lite hearing. At the pendente lite hearing the judge said that he was requiring Wingard to pay the mortgage payments for the marital home for three months. The written order dated July 27, 1983 required Wingard to "pay directly to [West] *as alimony*, the sum of Four Hundred Seventy-four Dollars and Ten Cents ($474.10) per month and she shall make mortgage payments ... until final hearing in this matter." (Emphasis added). Wingard claims that he has made four extra support payments which total One Thousand Six Hundred Fifty-five Dollars and Twelve Cents ($1,655.12)[2] and cites as error the trial judge's failure to rule on this matter.

This argument is without merit. There is no indication

that the family court judge who rendered the pendente lite order intended to award a lump-sum alimony award for only three months. Moreover, the written order described the Four Hundred Ninety-four Dollars and Ten Cents ($494.10) per month figure as alimony. The trial judge clearly rendered a decision on the alimony issue.

## IV.
### Attorney's Fees and Costs

West argues on appeal that the trial judge erred in not awarding her attorney's fees and costs. "She states that the breakdown of the marriage was caused by Wingard's behavior and that she has few assets from the marriage while [Wingard's] assets are great." The denial of attorney's fees is a matter within the sound discretion of the family court. *Courie v. Courie*, 341 S. E. (2d) 646 (S. C. Ct. App. 1986); *Nelson v. Merritt*, 281 S. C. 126, 131, 314 S. E. (2d) 840, 843 (Ct. App. 1984). The same equitable considerations which apply to attorney's fees also apply to costs. *Nienow v. Nienow*, 268 S. C. 161, 232 S. E. (2d) 504, 510 (1977). Here, the trial court adopted the agreement of the parties regarding the proceeds of sale of the marital home. West was thus provided with a source of funds to pay her attorney. Under these circumstances we cannot conclude that the trial judge abused her discretion.

In conclusion, the judgment below is affirmed except that the issues concerning alimony and the valuation and determination of the parties' interest in the SCE&G stock are remanded for resolution consistent with this decision.

Affirmed in part, remanded in part.

GOOLSBY, and SHAW, JJ., concur.

---

[2] We cannot determine how this figure was reached. Wingard claims that he paid four extra mortgage payments. This amount should be One Thousand Nine Hundred Twenty-six Dollars and Forty Cents ($1,926.40) and not the One Thousand Six Hundred Fifty-five Dollars and Twelve Cents ($1,655.12) sought on appeal.