THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
David E. Steele, Respondent,
v.
Clara M. Steele, Appellant.
 
 
 

Appeal From Lancaster County
 Walter B. Brown, Jr., Family Court 
 Judge

Unpublished Opinion No. 2004-UP-578   
Submitted October 1, 2004  Filed November 
 17, 2004 

AFFIRMED

 
 
 
G. Robin  Alley, of Columbia, for Appellant.
Philip E. Wright, of Lancaster, for Respondent.
 
 
 

PER CURIAM: Clara M. Steele appeals from a family court order finding 
 her in contempt for destroying the plants, shrubs, and trees surrounding her 
 former marital home.  We affirm. [1] 
FACTS
Clara M. Steele (Wife) and David E. Steele (Husband) were divorced on March 
 27, 2003.  The settlement agreement, which was incorporated into the final order, 
 required Wife to vacate the marital home by April 15, 2003, at which time Husband 
 would pay her $5,000 for moving expenses.  Husband agreed to pay Wife $45,000 
 by May 15, 2003, and an additional $40,000 by April 1, 2007.  In the agreement, 
 the parties promised not to destroy or damage any real or personal property 
 of the other party. 
After having been in exclusive physical possession of the marital home for 
 three years pending the final settlement of the parties property rights, Wife 
 vacated the home on April 15, 2003.  Husband entered the home the following 
 day.  Shortly after moving in, he noticed damage to the Yoshino cherry trees, 
 the most fragile plants in the yard.  He soon noticed a general decline in the 
 health of the other plants as well.  Thirteen days after Husband took possession 
 of the home, many of the plants around the house were dead or dying.  Pictures 
 of the damage showed that the plants within ten to fifteen feet of the house 
 had been completely destroyed.   
Husband brought a contempt action against Wife on May 16, 2003, alleging Wife 
 had damaged and destroyed plants, shrubs, and trees around the marital home.  
 He further requested to suspend payment of the $45,000 he owed Wife until the 
 contempt action was heard.  At the hearing, Husband testified as to his opinion 
 as a landscaper with a degree in horticulture and a holder of a South Carolina 
 pesticide license.  He believed that a chemical had been applied to the soil 
 and that the chemical would have residual effects.  To test this theory, Husband 
 planted new plants in the contaminated soil to see if they would survive.  The 
 new plants died almost immediately.  Husband also testified that he engaged 
 experts to help him document the damage and estimate the cost of repair. 
Husband believed Wife was responsible for the damage.  He pointed out that 
 Wife has a master gardener degree from Clemson University and is fairly knowledgeable 
 on chemicals that could be used to contaminate soil.  Wifes cousin and sister 
 testified for Husband, and both stated that Wife told them she would kill and 
 destroy all the plants around the house if she had to move from the marital 
 home.  In response, Wife presented testimony that she was not close to her sister 
 or cousin and she would not tell them such damaging information.  Wifes daughter 
 and another cousin testified that Wife had never mentioned destroying any plants 
 around the house.   
The family court held Wife in contempt and ordered Husband to engage the services 
 of a licensed contractor to return the property as close as possible to its 
 condition on April 15, 2003.  The court ordered that Wife would bear the cost 
 of removing any contaminated soil and replacing all the plants that were destroyed.  
 The court further found Wife should pay Husbands attorneys fees and costs, 
 totaling $1,000.  Both the cost of restoring the property and the attorneys 
 fees were to be deducted from the $45,000 Husband owed Wife.   
Pursuant to Wifes motion for reconsideration, the court modified the contempt 
 order as it related to damages.  The amended order required each party to obtain 
 an estimate for removing the soil and replacing the plants.  The parties were 
 directed to attempt to come to an agreement on the cost of restoring the property.  
 If an agreement could not be reached, a subsequent hearing would be scheduled 
 to determine the measure of damages.  Wife appeals.             
STANDARD OF REVIEW
Although a determination of contempt is within the family courts discretion, 
 an order holding a party in contempt should be reversed when the holding is 
 based on a finding that is without evidentiary support or when there is . . 
 . an abuse of discretion.  Means v. Means, 277 S.C. 428, 431, 288 S.E.2d 
 811, 812-13 (1982).  To sustain a finding of contempt, the record must be clear 
 and specific as to acts or conduct upon which the finding is based.  See 
 Curlee v. Howle, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982).
LAW/ ANALYSIS
Wife maintains the family court erred in holding her in contempt of a prior 
 court order because the finding is without evidentiary support.  We disagree.
Upon moving into the home, Husband immediately started noticing problems with 
 the plants, shrubs, and trees on the property.  As stated above, a mere thirteen 
 days later almost everything, including the grass surrounding certain plants, 
 was dead or dying.  In Husbands opinion as a landscaper and licensed pesticide 
 applicator, the soil had been directly contaminated.  He tested his theory by 
 planting new tomato plants, all of which died over a two-week period.   Furthermore, 
 Husband testified that the rain totals for the year had been more than sufficient.  

Additionally, Wife is a master gardener and has some knowledge of chemicals.  
 She also had direct, unfettered access to the house.  In contrast, Husband testified 
 that he once had to be escorted to the property by a deputy sheriff to view 
 a roof in need of repair so Wife would not shoot at him. 
Most importantly, Shelby Jean Taylor, Wifes first cousin, testified that Wife 
 said on several occasions that she was going to kill everything around [the 
 house].  Wifes sister, Samantha Ann Roads, testified that, following their 
 mothers death, Wife said that if she had to move from the house, had to leave 
 the house, that she would kill and destroy all the plants around the house.  
 Though Wifes daughter and Wifes cousin, Joyce Snipes, both testified that 
 Wife had a strained relationship with Husbands witnesses and would never have 
 used them as confidantes, Snipes testimony contradicted Wifes.  Snipes claimed 
 that Wife and Husbands witnesses had not spoken since the funeral of Wifes 
 mother.  However, Wife admitted she saw Taylor and her sister once a month since 
 her mother passed away.  
Based on the testimony of the witnesses, we find there is evidence in the record 
 from which the family court could find that Wife destroyed the plants surrounding 
 the marital home.  Therefore, the family court did not abuse its discretion 
 by holding Wife in contempt of its previous order. 
Wife next maintains the family court erred by awarding damages to Husband because 
 the damages were speculative in nature and based entirely on conjecture.  We 
 disagree.
According to the order dated July 25, 2003, the parties each must acquire one 
 estimate on the cost of removal of the contaminated soil and replacement of 
 the plants, which were destroyed.  If they cannot agree on a price to replace 
 the plants, the family court shall schedule a hearing . . . to determine the 
 measure of damages.   Thus, damages have yet to be awarded.  Because the family 
 court has not made a final ruling on damages, the appeal as to the issue of 
 damages is premature.  See S.C. Code Ann. § 14-3-330 (1976).     
Accordingly, the family courts order 
 is
AFFIRMED.
HEARN, C.J., HUFF, and KITTREDGE, JJ., concur.

 
 
 [1] We decide this case without oral argument pursuant to Rule 215, SCACR.