746 S.E.2d 54

**Daisy Wallace SIMPSON, Appellant/Respondent,**

v.

**William Robert SIMPSON, individually and as shareholder/member of Simpson Farms, L.L.C. and William R. Simpson, Jr., as shareholder/member of Simpson Farms, L.L.C., Respondents/Appellants.**

Appellate Case No. 2011–196348.

No. 5151.

Court of Appeals of South Carolina.

Heard Dec. 12, 2012.

Decided June 26, 2013.

Rehearing Denied Aug. 8, 2013.

564

566

James T. McLaren and C. Dixon Lee, both of McLaren & Lee; and Carrie Ann Warner, of Warner, Payne, & Black, L.L.P., all of Columbia, for Appellant/Respondent.

Reid B. Smith, of Bird & Smith, P.A., of Columbia, for Respondents/Appellants.

GEATHERS, J.

This is a cross-appeal from the family court's order that modified the division of property in the parties' decree of divorce. Daisy Wallace Simpson (Wife) argues the family court committed error by modifying the division of property in the decree and failing to award her attorney's fees and expenses. William R. Simpson, Sr. (Husband) and William R. Simpson, Jr. (Son) also appeal, arguing the family court erred in: (1) modifying the decree because it did not have subject matter jurisdiction; (2) disregarding the law of the case; (3) finding the decree was ambiguous and, consequently, modifying the decree in an effort to ascertain the intent of the trial judge; (4) modifying the decree when Husband, Son, and the

LLC had complied with the terms of the decree; (5) its reapportionment of the marital property; and (6) failing to make specific findings of fact and conclusions of law. Husband and Son also contend that Wife is judicially estopped from demanding a cash sum award or that the LLC transfer real estate to her. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Husband and Wife married in 1968. During the course of the marriage, Husband became a successful farmer and real estate investor. In April 2000, Husband and Son signed a limited liability company operating agreement and Husband began to transfer substantial property acquired during the marriage into Simpson Farms, L.L.C. (the LLC). One month later, Wife became aware of these transfers of property into the LLC.

In March 2003, Wife filed an action for divorce, naming Husband, Son, and the LLC as parties. In her complaint, Wife requested, among other relief, an equitable division of the marital assets, including the property that Husband transferred into the LLC. Most of the trial concerned the identity and value of Husband's vast property holdings.

On December 31, 2004, Husband and Wife were divorced by decree of the family court (the Final Decree). In the Final Decree, the family court found that each of Husband's individually owned property holdings was marital property. The family court further found "the transfer of marital property into the LLC was effective as to Son, and Husband should be charged with only 50% of the value of the property held by the LLC." Additionally, the family court identified and valued the marital property that Husband owned individually and as a member of the LLC.

Based on its identification of the marital assets, the family court awarded Wife 34% of the marital estate, valued at $784,055. In order to effect the equitable division, the family court ordered Husband to transfer to Wife each of the seven properties it found Husband owned individually.[1] By a subsequent order, the family court awarded Wife $85,000 in attor-

---

1. The Final Decree did not order Son or the LLC to take part in the transfer of property to Wife.

ney's fees and costs. Husband appealed the equitable division of the marital property in the Final Decree. Wife appealed the order regarding attorney's fees and costs. Neither Son nor the LLC appealed.

This matter initially came before this court in *Simpson v. Simpson,* Unpublished Opinion No. 2007–UP–147 (S.C.Ct.App. filed April 4, 2007), *cert. denied,* Feb. 21, 2008 (*Simpson I* ). Therein, Husband argued the family court erred in awarding to Wife certain pieces of real property that were owned by the LLC. *Simpson I.* This court found that Husband's argument was not preserved for appellate review.[2] *Id.* Additionally, this court stated that, even if the issue had been preserved, Husband failed to present credible evidence to support his contention that the property had been transferred to the LLC. *Id.* Accordingly, this court held, "the property awarded to [Wife] was individually owned by [Husband], and was *not* property owned by the LLC." *Id.* (emphasis added). As to Wife's appeal, this court remanded the issues of attorney's fees and costs to the family court. *Id.* Husband subsequently filed a Petition for Writ of Certiorari with our supreme court, which was denied on February 21, 2008.

Following *Simpson I,* Wife filed a contempt action, alleging Husband and Son were in contempt for failing to transfer the funds and properties awarded to her in the Final Decree.[3] Thereafter, several contempt hearings were held before another family court judge.[4] Throughout the hearings, Husband

---

2. In *Simpson I,* this court held that the issue was not preserved because Husband did not raise it to the family court and the family court dismissed his subsequent Rule 59(e) motion. This court also noted that Husband failed to raise the issue in his Rule 59(e) motion.

3. Prior to the hearing on Wife's motion, Van Mark Stone and Paul Terry Stone (collectively, the Stones) filed a *lis pendens* on the House and 16 acres. The Stones subsequently brought a declaratory judgment action against the LLC, Husband, Son, and Wife. The Stones' action sought to quiet title to a 3.5 acre portion of the House and 16 acres, including the house and three acres surrounding the house. The parties eventually settled the quiet title action with the Stones. As a part of the settlement, Wife signed a consent order, acknowledging that Husband did not own the house and surrounding three acres.

4. At the second contempt hearing, Husband informed the family court that he had tendered quitclaim deeds to Wife conveying his individual

and Son maintained that Husband did not have the legal ability to transfer complete interest in three of the seven properties awarded to Wife in the decree—the 161.1 acre tract, the 133.2 acre tract, and the House and 16 acres (collectively, the subject properties)—because the properties were titled in the name of the LLC.[5] Additionally, Son testified that as a member of the LLC he would not consent to transferring the subject properties to Wife.

After the contempt hearings, the family court issued a contempt order on May 28, 2010, finding Husband was not in contempt because the LLC was the titled owner of the subject properties. Consequently, the family court denied Wife's request for attorney's fees regarding the contempt action. On June 7, 2010, Wife filed a motion to reconsider, arguing the family court erred in finding Husband was not the titled owner of the subject properties. Wife further argued the contempt order would result in her receiving less than her percentage share of the marital assets. In response to Wife's motion, the family court issued an order on March 18, 2011, reapportioning the marital property. Subsequently, Husband and Son individually filed motions for reconsideration with the family court, which were both denied. This cross-appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, appellate courts review factual and legal issues *de novo*. *Simmons v. Sim-*

---

interest for each of the seven properties. He also stated that Wife had rejected the quitclaim deeds and insisted that Husband provide her with general warranty deeds to the properties. Wife later testified that she rejected all of the quitclaim deeds, except one, because they gave her less than her percentage share of the marital assets. She explained that she accepted the quitclaim for the 6.7 acre tract, in order to satisfy the parties' daughter, Charley Simpson (Daughter). She testified that she had accepted the quitclaim deed because the family court had inadvertently included the 6.7 acre tract as one of the properties awarded to her in the Final Decree. Wife's testimony is consistent with the Final Decree, which recognized that Husband and Wife had agreed that Daughter was to receive a house, not clearly identified in the evidence, as a gift on her twenty-first birthday.

5. Husband and Son did not challenge the family court's finding that the other four properties awarded to Wife in the Final Decree were actually titled in Husband's individual name.

*mons,* 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis,* 392 S.C. 381, 385, 709 S.E.2d 650, 651–52 (2011). "However, we recognize this broad scope of review does not alter the fact that a family court is better able to make credibility determinations because it has the opportunity to observe the witnesses." *Wilburn v. Wilburn,* 403 S.C. 372, 743 S.E.2d 734 (2013) (Shearouse Adv. Sh. No. 20 at 22). "Additionally, the de novo standard does not relieve the appellant of the burden of identifying error in the family court's findings." *Id.* "Accordingly, the decision of the family court will be upheld unless the Court finds that a preponderance of the evidence weighs against the family court's decision." *Id.*

## LAW/ANALYSIS

### I. Modification of the Decree

■ Wife, Husband, and Son argue the family court lacked subject matter jurisdiction to modify the division of property set forth in the Final Decree. We agree.

■ Generally, the family court has the authority to modify any order issued by the court. S.C.Code Ann. § 63–3–530(A)(25)(2010) (stating the family court has exclusive jurisdiction to modify or vacate any order issued by the court). However, "the law in South Carolina is exceedingly clear that the family court *does not* have the authority to modify court ordered property divisions." *Green v. Green,* 327 S.C. 577, 581, 491 S.E.2d 260, 262 (Ct.App.1997) (emphasis added) (citations omitted); *see* Roy T. Stuckey, *Marital Litigation in South Carolina* 375 (4th ed.2010) (discussing exceptions to the family court's exclusive jurisdiction to modify an order issued by it). Section 20–3–620(C) of the South Carolina Code (Supp.2012) provides, "The [family] court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal." As this court explained in *Swentor v. Swentor,* 336 S.C. 472, 480 n. 2, 520 S.E.2d 330, 334 n. 2 (Ct.App. 1999):

> While an agreement concerning alimony or child support may be modified and enforced by the family court unless the agreement clearly provides otherwise, *an agreement regard-*

*ing equitable apportionment claims is final and may not be modified by the parties or the court,* although it may be enforced by the family court unless the agreement provides otherwise.

(emphasis added) (citations omitted).

Following *Simpson I,* Husband and Son used the contempt hearings as an opportunity to relitigate the issue of ownership of the subject properties. Throughout the contempt hearings, Husband and Son maintained that they should not be held in contempt because the subject properties were titled in the name of the LLC, rather than in Husband's individual name. The family court judge ultimately accepted Husband and Son's contention and issued a contempt order on May 28, 2010, finding the subject properties were titled in the name of the LLC. Based on this finding, the family court concluded that Husband, as a member of the LLC, did not have a transferable interest in the real estate belonging to the LLC pursuant to South Carolina Code section 33–44–501(a).[6] As a result, the family court determined that it could not specifically enforce the provision in the Final Decree ordering Husband, individually, to transfer full ownership in the subject properties to Wife. In an effort to resolve this issue, the family court issued an order on March 18, 2011, removing Son's fifty-percent interest in each of the subject properties from the marital estate and reapportioning the marital property.

In this instance, both the May 28, 2010 contempt order and the March 18, 2011 order on Wife's motion for reconsideration, in effect, modified the division of property in the Final Decree. Notably, in taking this course of action, the family court acknowledged that its rulings were in contravention of the property provisions in the Final Decree which this court upheld in *Simpson I* and upon which our supreme court denied certiorari. Nonetheless, the family court found its

---

6. Generally, "a limited liability company is a legal entity distinct from its members." S.C.Code Ann. § 33–44–201 (2006 & Supp.2012). "A member is not a co-owner of, and has no transferable interest in, property of a limited liability company." S.C.Code Ann. § 33–44–501(a) (2006 & Supp.2012); *see also* Comment to S.C.Code Ann. § 33–44–501 ("Members have no property interest in property owned by a limited liability company.").

equitable powers provided it the authority to reinterpret the decree and to reapportion the marital property.

We find the family court lacked subject matter jurisdiction to modify the property provisions in the Final Decree. This court has previously held that it is beyond the equitable powers of the family court to reopen and modify court ordered property divisions. *See Green,* 327 S.C. at 581, 491 S.E.2d at 262 (holding the family court erred by concluding it was within its equitable powers to reopen and modify portions of a property settlement agreement incorporated into a divorce decree). Furthermore, *Simpson I* affirmed the identification and apportionment of the marital property in the Final Decree. The sole issue remanded to the family court was the issue of attorney's fees. *See* S.C.Code Ann. § 20–3–620(C) ("The [family] court's order as it affects distribution of marital property shall be a final order not subject to modification except by appeal or remand following proper appeal."); *Hayes v. Hayes,* 312 S.C. 141, 144, 439 S.E.2d 305, 307 (Ct.App.1993) (holding the family court lacked subject matter jurisdiction to consider wife's subsequent action for equitable distribution of husband's retirement benefits). Accordingly, in the present case, it was error for the family court to modify the property provisions in the Final Decree.[7]

█ We also find the family court erred in allowing Husband and Son to relitigate the issue of ownership of the subject properties at the contempt hearings. First, Husband and Son's argument that Husband, individually, could not comply with the Final Decree because the subject properties were titled in the name of the LLC, was barred by the doctrine of res judicata. *See Duckett v. Goforth,* 374 S.C. 446, 464, 649 S.E.2d 72, 81 (Ct.App.2007) ("*Res judicata* precludes parties from subsequently relitigating issues actually litigated and those that might have been litigated in a prior action"); *Richardson v. Richardson,* 309 S.C. 31, 35, 419 S.E.2d 806, 808

---

7. Because it was error for the family court to modify the property provisions in the Final Decree, we need not address Husband's and Son's additional arguments regarding the modification of the Final Decree and the reapportionment of the marital estate. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

(Ct.App.1992) (upholding the family court's ruling that the "issue of alimony was *res judicata* and could not be relitigated and it was the court's duty to effect compliance with the agreement as best as possible" when husband contended he could not comply with the parties' settlement agreement requiring him to satisfy his alimony obligation by transferring the marital home to wife because the home was owned by his mother). Second, the law of the case doctrine precluded Husband and Son from relitigating this issue. In *Simpson I*, this court explicitly found "the property awarded to [Wife] was individually owned by [Husband], and *was not property owned by the LLC*." (emphasis added). Thus, *Simpson I* expressly rejected Husband's argument concerning the LLC's ownership of the subject properties. Moreover, our supreme court implicitly approved the ownership determinations in the Final Decree by denying Husband's petition for certiorari. *See Judy v. Martin,* 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009) (citing *Bakala v. Bakala,* 352 S.C. 612, 632, 576 S.E.2d 156, 166 (2003)) (stating that under the law of the case doctrine, "a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court"). Furthermore, Son, who has been a party to this action since it commenced in 2003, did not appeal the family court's determination that Husband individually owned the subject properties. *See Doran v. Doran,* 288 S.C. 477, 478, 343 S.E.2d 618, 619 (1986) (stating that no objection can be made to an appealable order from which no appeal was taken); *Buckner v. Preferred Mut. Ins. Co.,* 255 S.C. 159, 160–61, 177 S.E.2d 544, 544 (1970) (stating an unappealed ruling, right or wrong, is the law of the case and requires affirmance). Therefore, Husband and Son were not entitled to take a second bite at the apple by defending themselves in the contempt proceedings on the ground that the subject properties were titled in the name of the LLC.

## II. Findings of Fact and Conclusions of Law

Husband and Son argue the family court erred by not setting forth specific findings of fact or conclusions of law it reached in its March 18, 2011 order, reversing its May 28, 2010 contempt order. Having found the modifications to the

decree made in both orders were error, we need not address Husband and Son's argument. *See Futch,* 335 S.C. at 613, 518 S.E.2d at 598 (providing an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

### III. Judicial Estoppel

■ Husband and Son contend that because Wife had previously maintained in all judicial forums that the subject properties belonged to Husband, she is precluded by judicial estoppel from demanding a cash sum award or that the LLC transfer real estate to her. We disagree.

■ "Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding." *Cothran v. Brown,* 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004). In *Cothran,* our supreme court held that the following elements are necessary for the doctrine of judicial estoppel to apply: (1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent. 357 S.C. at 215–16, 592 S.E.2d at 632.

We find the evidence in this matter fails to satisfy the fourth element of judicial estoppel. The fourth necessary element of judicial estoppel is satisfied when a litigant asserts an inconsistent position as a part of an intentional effort to mislead the court. *Id.* at 216, 592 S.E.2d at 632. Here, there is no evidence Wife sought to intentionally mislead the family court. To the contrary, in *Simpson I,* this court found that Wife's expert "had a difficult time determining what property had been acquired and sold by Husband due to the lack of income or expense records maintained by Husband or [Son]." Additionally, this court found that Husband effectively stonewalled Wife's expert's efforts to identify Husband's property

holdings because "he failed to provide a list of his property." *Simpson I.* This court noted that Wife's expert "had to look in several counties to determine what Husband owned" and "spent 1,248 hours attempting to identify all of the property owned by Husband." *Id.* Moreover, within the Final Decree, the family court stressed its own difficulty in determining what property Husband owned. Given the difficult circumstances Wife faced in determining the exact nature of Husband's property holdings, we find judicial estoppel does not apply because there was no intentional effort by Wife to mislead the court.

## IV. Enforcement of the Decree

■ The crux of this dispute is how Wife's equitable apportionment award should be enforced. Due to the prolonged nature of this dispute and the family court's admitted difficulty in enforcing the Final Decree, we address the appropriate method of making Wife whole again.

Although the family court lacked subject matter jurisdiction to modify the property provisions in the Final Decree, it did have the equitable authority to enforce the Final Decree. *See Swentor,* 336 S.C. at 480 n. 2, 520 S.E.2d at 334 n. 2 (stating that although an order regarding the distribution of marital property is not modifiable, it may be enforced by the family court). Therefore, even if the Final Decree mistakenly declared the subject properties to be titled in Husband's name, it was the duty of the family court to interpret the intent of the property provisions in the Final Decree and effect compliance as best as possible. *See Richardson,* 309 S.C. at 36, 419 S.E.2d at 809 (citing *Means v. Means,* 277 S.C. 428, 288 S.E.2d 811 (1982)) (stating the duty of the trial judge in an action for civil contempt is to determine an appropriate method of making the aggrieved party whole again when the prior order cannot be specifically enforced as written).

■ "The primary purpose of an action for civil contempt is to exact compliance" and in doing such, "the court must interpret what the decree mandated, considering the purpose and object of the underlying litigation." *Id.* at 35–36, 419 S.E.2d at 809. In this instance, the Final Decree clearly identifies the subject properties as marital property titled in

Husband's individual name. Additionally, the Final Decree orders Husband to transfer to Wife full ownership in each of the subject properties as a part of her equitable apportionment award. Therefore, we interpret the decree as mandating that Wife receive full ownership in the subject properties.

Given the clear mandate in the Final Decree that Wife is entitled to full ownership in the subject properties, it was the duty of the family court to effectuate the division of marital property as written in the Final Decree. Furthermore, in *Simpson I*, this court found that there was no credible evidence to support Husband and Son's argument that the family court mistakenly declared the subject properties to be titled in Husband's name. Therefore, irrespective of the alleged mistake in the Final Decree, the family court had subject matter jurisdiction to determine the subject properties were marital property and to apportion the subject properties to Wife.

 Our supreme court has held that the family court has subject matter jurisdiction to equitably apportion property owned by a third party. *In re Sexton,* 298 S.C. 359, 361, 380 S.E.2d 832, 834 (1989); *see generally* Roy T. Stuckey, *Marital Litigation in South Carolina* 276 (4th ed.2010) (discussing the family court's authority to equitably apportion property owned by a third party). Section 20–3–630(A) of the South Carolina Code (Supp.2012) defines marital property as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... *regardless of how legal title is held.*" (emphasis added). "This section specifically provides for the possibility that marital property could be titled in a third party." *In re Sexton,* 298 S.C. at 361, 380 S.E.2d at 834. When property is alleged to be marital property, but is owned by a third party, the family court has the authority to join all persons with a possible interest in the property as parties to the action and to determine if the property constitutes marital property. *Id.* at 361–62, 380 S.E.2d at 834. "If the property is found to be marital property, the [family court] has the authority to apportion it among the parties." *Id.*

This court previously dealt with the issue of distributing marital property owned by a third party in *Richardson v.*

*Richardson,* 309 S.C. 31, 419 S.E.2d 806 (Ct.App.1992). There, the family court adopted the parties' settlement agreement, which required husband and husband's mother to transfer the marital home to wife as a part of wife's alimony award. *Id.* at 33, 419 S.E.2d at 807. Wife brought a rule to show cause motion against husband and husband's mother, alleging they had not complied with the alimony provisions of the divorce decree. *Id.* at 34, 419 S.E.2d at 808. In his return, husband argued that he did not own an interest in the marital home and was legally unable to comply with the decree. *Id.* The family court found that it had no jurisdiction over husband's mother because she was not a party to the divorce proceedings. *Id.* The family court concluded that husband was not in contempt because he was not the titled owner of the property and was unable to comply with the divorce decree. *Id.* at 35, 419 S.E.2d at 808. In order to make wife whole, the family court determined the value of the marital residence and ordered husband to pay to wife lump sum alimony in that amount. *Id.* This court upheld the decision of the family court, finding "the family court's interpretation to be logical and fair and the best possible solution in making the wife whole." *Id.* at 36, 419 S.E.2d at 808.

We find that the facts of the present case are distinguishable from *Richardson.* In this instance, Husband, Son, and the LLC were all joined as parties to the divorce action. In the Final Decree, the family court concluded that fifty-percent of property titled in the name of the LLC property was marital property. The family court also found that all the property titled in Husband's individual name was marital property. As to the subject properties, the family court classified each one as marital property titled in Husband's individual name. Neither Husband, Son, or the LLC properly challenged this classification. *See Simpson I.* Moreover, this court affirmed the family's court determination that the subject properties were marital property titled in Husband's individual name. *Id.* Because the LLC was joined as a party to the divorce action and the family court determined the subject properties were marital property, the family court had the authority to award full ownership in the subject properties to Wife, regardless of how legal title was held. *See In re Sexton,* 298 S.C. at 361–62, 380 S.E.2d at 834 (stating that if the family court determines that property owned by a third

party is marital property, and the third party has been joined in the action, then the family court has the authority to determine the parties' equitable rights therein); *Hough v. Hough*, 312 S.C. 344, 351, 440 S.E.2d 387, 391 (Ct.App.1994) (rejecting husband's mother's argument that marital home titled in her name was not marital property and affirming the award of the marital home to husband).

Pursuant to the Final Decree, Wife was entitled to have full ownership in the subject properties. As outlined above, the family court had subject matter jurisdiction to award full ownership interest in the subject properties to Wife. Furthermore, the family court reiterated throughout the Final Decree that there was no clear identification and valuation of the marital property due, in large part, to Husband and Son's resistance to any effort to disclose the exact nature of their holdings. Therefore, it would be inappropriate and inequitable to allow Husband and Son to benefit, by avoiding transfer of the subject properties to Wife, from an error created by their own conduct. *See Cox v. Cox*, 290 S.C. 245, 248, 349 S.E.2d 92, 93 (Ct.App.1986) ("A party cannot complain of an error which his own conduct has induced.").

We find equity and fairness require the family court to carry the terms of the Final Decree into effect by requiring Husband, Son, and the LLC to join in the execution of the deeds to the subject properties to Wife. *See Ex parte Dibble*, 279 S.C. 592, 595, 310 S.E.2d 440, 442 (Ct.App.1983) (stating that "[c]ourts have the inherent power to do all things reasonably necessary to insure that just results are reached to the fullest extent possible"); *cf. Buckley v. Shealy*, 370 S.C. 317, 323–24, 635 S.E.2d 76, 79 (2006) (stating the family court was authorized to convert to money judgment a note that the husband had been ordered, but failed, to assign to wife in divorce proceedings). Therefore, we reverse the family court's orders modifying the ownership determinations and division of property in the decree and remand this case to the family court to enforce the property provisions in the Final Decree by ordering Husband, Son, and the LLC to join in the execution of the deeds to the subject properties to Wife.

## V. Attorney's Fees

Wife argues that the family court abused its discretion by failing to award her compensatory attorney's fees and

expenses for her efforts to enforce the terms of the Final Decree. We agree.

It is well settled that an award of attorney's fees is within the sound discretion of the trial judge and will only be disturbed on appeal upon a showing of an abuse of discretion. *Abate v. Abate*, 377 S.C. 548, 555, 660 S.E.2d 515, 519 (Ct.App. 2008). Courts may award attorney's fees under a compensatory contempt theory. *Id.* at 555 n. 4, 660 S.E.2d at 519 n. 4. The court may award compensatory contempt damages to the moving party for the costs he or she incurs in forcing the non-complying party to obey the court's orders. *See Poston v. Poston*, 331 S.C. 106, 114, 502 S.E.2d 86, 90 (1998) ("In a civil contempt proceeding, a contemnor may be required to reimburse a complainant for the costs he incurred in enforcing the court's prior order, including reasonable attorney's fees. The award of attorney's fees is not a punishment but an indemnification to the party who instituted the contempt proceeding."); *Lindsay v. Lindsay*, 328 S.C. 329, 345, 491 S.E.2d 583, 592 (Ct.App.1997) ("A compensatory contempt award may include attorney fees.").

Wife has spent over five years seeking to enforce the property provisions in the Final Decree. The family court held that Husband was not in contempt because the subject properties were titled in the name of the LLC and, therefore, Husband did not have the legal ability to comply with the terms of the decree. As discussed previously, the finding that the LLC was the titled owner of the subject properties was erroneous. *See Feldman v. Feldman*, 380 S.C. 538, 546, 670 S.E.2d 669, 673 (Ct.App.2008) ("An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings that are without evidentiary support."). Therefore, we remand the issue of attorney's fees for further consideration in light of this decision.

## VI. Conclusion

We reverse the family court's modifications to the property provisions of the Final Decree and remand for enforcement of the Final Decree as instructed in this decision.

**REVERSED AND REMANDED.**

HUFF and THOMAS, JJ., concur.